IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 8, 2011

**STATE OF TENNESSEE v. KERRY DOUGLAS CALAHAN**

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2009-CR-88     Robert Crigler, Judge**

**No. M2010-01310-CCA-R3-CD - Filed August 26, 2011**

A Marshall County Circuit Court jury convicted the appellant, Kerry Douglas Calahan, of aggravated assault, aggravated criminal trespass, simple assault, two counts of theft of property valued less than five hundred dollars, and resisting arrest. After a sentencing hearing, the appellant received an effective sentence of six years, six months to be served in confinement. On appeal, the appellant contends that the evidence is insufficient to support his conviction for aggravated assault and that his sentence for aggravated assault is excessive. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Gregory D. Smith (on appeal), Clarksville, Tennessee, and William J. Harold and Stephanie Barca (at trial), Shelbyville, Tennessee, for the appellant, Kerry Douglas Calahan.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The record reflects that the Marshall County Grand Jury indicted the appellant for count 1, aggravated burglary, a Class C felony; count 2, aggravated assault of Patricia Cozart, a Class C felony; count 3, assault of Roberto Cebrero, a Class A misdemeanor; counts 4 and

5, theft of property valued less than five hundred dollars, a Class A misdemeanor, for taking Cozart's and Cebrero's cellular telephones; and count 6, resisting arrest, a Class B misdemeanor. The alleged offenses occurred on September 20, 2009.

At trial, Patricia Cozart testified that she was the appellant's girlfriend for six years and that they had two children together, an eight-year-old and a fourteen-month-old son named Lucas. She said that she and the appellant "split up" and that she obtained an order of protection against him on July 10, 2009. In the days before the incident in question, Cozart's then ten-month-old son had been sick, and she asked the appellant to help her with him. She also had sexual intercourse with the appellant one time. On Saturday, September 19, 2009, Cozart was supposed to work from 6:00 a.m. until noon, and she asked the appellant to babysit Lucas, who was still sick. The appellant stayed with Lucas at Cozart's trailer while Cozart went to work. When Cozart returned home shortly after noon, she told the appellant he had to leave. The appellant was upset but left the trailer. Cozart was dating Roberto Cebrero, and he came to her home that evening

Cozart testified that in the early morning hours of September 20, Lucas was asleep in his bedroom and Cebrero was asleep in Cozart's bedroom. Cozart heard what sounded like a car door slam and went to her front door. When she opened the door, the appellant was standing in front of her. She said she told him, "What are you doing here; you can't come in." She said the appellant stated, "Why, have you got company[?] Is your boyfriend here[?]" Cozart told the appellant, "Yes, I do have company." She said that the appellant was mad and that she was afraid. She moved out of the way, the appellant came inside, and the appellant walked to her bedroom. She said that the appellant said, "Hey" to Cebrero; that Cebrero sat up; and that the appellant asked him, "Do you love Patsy; do you love my baby Lucas[?]" Cozart said that Cebrero told the appellant he loved them and that the appellant "started wailing on his head." The appellant hit Cebrero about ten times with his fist, and Cebrero's ear and nose were bleeding. Cebrero did not fight back, and blood was on the bedroom floor, the bedroom wall, and his shirt.

Cozart testified that she yelled for the appellant to stop and tried to get her cellular telephone. However, the appellant took her and Cebrero's telephones, pushed her onto the floor, and hit her on the head with his fist. She said she "jumped up" and "took off like a bat out of hell." The trailer park manager, Robert Pace, lived in a trailer behind her trailer, and she ran to his home. The appellant ran after her. When Cozart got to Pace's front door, the appellant grabbed her by her hair and her shirt and tried to drag her back to her trailer. Pace opened the door and yelled for the appellant to let her go, and the appellant ran away. Cozart said the appellant injured her left eye and nose, bruised and scratched her neck, and bruised her upper right arm. She identified photographs showing her injuries. She said she later discovered that the appellant also had "busted" her lip and chipped one of her teeth. At some

point, a police officer returned Cebrero's telephone to him, but it was broken. The State showed Cozart two cellular telephones that had been recovered from the appellant after his arrest, and she identified her phone. She said that the order of protection was effective for one year and that it was in effect when the appellant assaulted her. She said that she had prior convictions for criminal trespass and theft and that she had violated probation previously.

On cross-examination, Cozart testified that she had been seeing the appellant for a couple of days prior to Sunday, September 20, so he could help her with their son. She also said that he spent Friday night with her and that she initiated the contact. She explained, "When I called him to come about his son, I believe that gave him an idea that we were going to work things out and get back together. That is not what I was intending on." She said that the sexual contact "just happened" and that "[t]hat is how we got Lucas." She said that when she asked the appellant to leave her home on September 19, she did not tell him Cebrero was coming over but that the appellant "had an idea that I was dating somebody else, though, because I had told him."

Roberto Cebrero testified that in the early morning hours of September 20, 2009, he was asleep in Cozart's bed and was awakened by someone hitting him. The person hit him three or four times, and he identified photographs of his injuries. After the incident, he discovered that his cellular telephone was missing.

On cross-examination, Cebrero testified that he had never seen the appellant before that night. He said that he had been dating Cozart for one week at the time of the incident and that no one said anything to him before the assault.

Robert Pace, Jr., testified that he lived in the Jackson Trailer Park and was the park manager. Patricia Cozart lived in a trailer in front of his trailer. About 1:00 a.m. on September 20, 2009, Pace was using his computer when he heard Cozart beating on his door. He went to the door and saw Cozart on the ground with the appellant above her. He said that the appellant appeared to be trying to pull Cozart back to her trailer, that Cozart was screaming, and that the appellant told her, "[C]ome on, come on." Pace told the appellant to let Cozart go, and the appellant released her. Pace said that the appellant wanted him to come outside but that he refused. The appellant ran away. Pace said Cozart was "beat up pretty bad."

On cross-examination, Pace testified that it was dark outside. However, he said that his porch light was on and that "[t]he whole trailer park [was] lit up." He saw the appellant drag Cozart but did not see the appellant hit her.

Officer Brad Martin of the Lewisburg Police Department testified that he was dispatched to the trailer park on September 20, that he arrived at 1:12 a.m., and that he was the first officer on the scene. He spoke with Cozart and Cebrero, and Cebrero had blood on his nose and ear. Officer Martin broadcast information about the appellant over the police radio, and other officers began looking for him. Cozart told Officer Martin that two cellular telephones were missing. After the police arrested the appellant and transported him to jail, Officer Martin went to the jail, looked through the appellant's property, and found Cozart's phone.

On cross-examination, Officer Martin testified that Cozart and Cebrero declined medical treatment. He said he collected two cellular telephones from the appellant's property.

Sergeant Anthony McLean of the Lewisburg Police Department testified that he began looking for the appellant on September 20, 2009. Sergeant McLean saw the appellant walking on Blair Street, which was about four hundred yards from the Jackson Trailer Park. He said that he called the appellant's name and told the appellant to stop but that the appellant "turned and went back around a camper that was in the yard." Sergeant McLean told the appellant to stop again, and the appellant ran toward Glen Avenue. Officer Jackie Sands arrived, and he and Sergeant McLean began looking for the appellant. They saw the appellant on the front porch of a house at the corner of Jackson and Glen Avenues and saw him go into the house. Officer Sands followed the appellant inside while Sergeant McLean secured the back of the house. Officer Sands handcuffed the appellant and brought him outside, and Sergeant McLean transported him to jail.

On cross-examination, Sergeant McLean testified that although it was dark outside, street lights were on. The appellant was wearing blue jeans but no shirt.

Deputy Sheriff Jackie Sands of the Maury County Sheriff's Department testified that on September 20, 2009, he was an officer with the Lewisburg Police Department and was en route to the Jackson Trailer Park when he learned Sergeant McLean had seen the appellant on Blair Street. Deputy Sands went to Blair Street and started searching with Sergeant McLean. He saw the appellant go into a house and followed the appellant. A woman met Deputy Sands at the door and told him the appellant was hiding in the kitchen. He said he found the appellant "hunched down behind the counter." Deputy Sands told the appellant to stand up and put his hands behind his back, and the appellant complied. Deputy Sands said that as he was handcuffing the appellant, the appellant "attempted to jerk away." Deputy Sands pushed the appellant onto the counter, pushed him onto the floor, and handcuffed him. As soon as the appellant was handcuffed, he stopped resisting. At the jail, Deputy Sands looked through the appellant's property and found three cellular telephones. One of the

phones matched the description of Roberto Cebrero's phone, so Deputy Sands returned the phone to Cebrero.

On cross-examination, Deputy Sands testified that the appellant resisted "[q]uite a bit" and had to be physically restrained. He did not have any trouble restraining the appellant.

Elinor Foster, the Circuit Court Clerk for Marshall County, testified that she maintained all of the criminal records for the circuit court. According to records, Patricia Cozart's order of protection was filed on July 10, 2009; was in effect until July 10, 2010; and was personally served on the appellant by Sheriff's Deputy Tony Nichols. According to the order, the appellant was restrained from having any contact with Cozart.

On count 1, the jury convicted the appellant of aggravated criminal trespass, a Class A misdemeanor, as a lesser-included offense of aggravated burglary. The jury convicted the appellant of the remaining offenses as charged.

## II. Analysis

A. Sufficiency of the Evidence

Because a protective order enjoining the appellant from having any contact with Patricia Cozart was in effect on September 20, 2009, the appellant's attack on Cozart was elevated from assault to aggravated assault. The appellant contends that the evidence is insufficient to support his conviction for aggravated assault because Cozart initiated contact with him, had sexual intercourse with him, and "should not benefit from her own wrongdoing." The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with

one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in the indictment,

> A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.

Tenn. Code Ann. § 39-13-102(c).  Aggravated assault committed in violation of an order of protection is a Class C felony.  Tenn. Code Ann. § 39-13-102(e)(1).

Taken in the light most favorable to the State, the evidence shows that the appellant arrived unannounced at Cozart's trailer in the early morning hours of July 20, 2009.  When she opened the door, he went inside, walked to her bedroom, and assaulted Roberto Cebrero.  Then he pushed Cozart onto the floor and hit her on the head with his fist.  She managed to escape to Robert Pace's trailer, and the appellant followed her.  When Pace opened the door, he saw Cozart on the ground with the appellant trying to drag her back to her trailer.  Pace said Cozart had been "beat up pretty bad," and photographs show bruises and scratches to her face and arm.  The evidence overwhelmingly demonstrates, and the appellant does not dispute, that he assaulted Cozart.

The appellant contends that the interests of justice should not elevate the assault to aggravated assault because Cozart initiated contact with him and had sex with him despite the protective order.  However, the appellant cites no authority, and we find none, in support of his position that a victim's initiating contact with a defendant, despite a protective order, exempts an assault from being elevated to aggravated assault pursuant to Tennessee Code Annotated section 39-13-102(c).  We note that a similar argument was raised and failed in State v. Joseph Scott Hayes, No. M2002-01871-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 1021, at *10 (Nashville, Dec. 8, 2003).  Given that a protective order enjoining the appellant from having contact with Cozart was in effect at the time of the assault, the evidence is sufficient to support his conviction for aggravated assault.

B.  Excessive Sentence

The appellant contends that his six-year sentence for aggravated assault is excessive. The State argues that the trial court properly sentenced the appellant. We agree with the State.

At the appellant's sentencing hearing, Lorannda Borja of the Probation and Parole Department testified that she prepared the then thirty-seven-year-old appellant's presentence report. The appellant had one prior conviction of aggravated domestic assault committed against Patricia Cozart and at least five prior convictions of simple domestic assault committed against her. In addition to the prior crimes committed against Cozart, the appellant also had two prior convictions for domestic assault committed against an unnamed girlfriend and two simple assaults committed against men. The appellant was on probation when he committed the offenses in the instant case. Borja stated that according to information she collected for the report, the appellant graduated from high school in 1990 and completed the "step up/step down" program in 2005. Borja was unable to provide information regarding the appellant's health, employment, or finances because he refused to cooperate with her. He also refused to give a personal statement for the report. She said that she went to the Marshall County Jail to interview the appellant and that he referred to her as a "bitch" when a correction officer led him away from the interview. On cross-examination, Borja testified that the appellant had two children and owed child support for at least one of them.

The State introduced the appellant's presentence report into evidence. In addition to the convictions described by Borja, the report shows that the appellant has two prior convictions of public intoxication, two prior convictions of reckless driving, and prior convictions of assault on a police officer, driving under the influence, and resisting arrest.

The appellant testified that he filled out the Personal Questionnaire and Statement form he received from the Board of Probation and Parole and that he wrote a personal statement on the form. The defense introduced the form into evidence. In the appellant's statement, he said, "I might have been wrong for the breaking of the Order of Protection but she was too. . . . What is good for me should be good for her. . . . If she was in so much fear why did she call[?]" The appellant asked the trial court for "mercy."

The trial court applied enhancement factor (1), that the appellant has "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," and placed "great weight" on the factor. Tenn. Code Ann. § 40-35-114(1). The trial court also applied enhancement factor (8), that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community," on the basis that the appellant had five prior probation violations and gave the factor "great weight." Tenn. Code Ann. § 40-35-114(8). Finally, the

trial court applied enhancement factor (13), that at the time of the felony offense, the appellant was on probation. See Tenn. Code Ann. § 40-35-114(13)(C). In mitigation, the trial court applied factor (2), that the appellant "acted under strong provocation." Tenn. Code Ann. § 40-35-113(2). The court noted that as a Range I, standard offender, the range of punishment for aggravated assault, a Class C felony, was three to six years. See Tenn Code Ann. § 40-35-112(a)(3). The trial court sentenced the appellant to the maximum punishment in the range. The trial court sentenced the appellant to eleven months, twenty-nine days for the four Class A misdemeanor convictions and six months for the Class B misdemeanor conviction. Regarding consecutive sentencing, the trial court found the appellant to be an offender whose record of criminal activity was extensive and "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2), (4). The trial court ordered that the six-month sentence for resisting arrest run consecutively to the remaining sentences, which were to run concurrently, for an effective sentence of six years, six months in confinement.

Appellate review of the length, range, or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-103(5), -210(b); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The appellant contends that the trial court should have reduced his sentence in mitigation. We note that the appellant claims that the trial court applied two mitigating factors, factor (2) and factor (11), that "the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." Tenn Code Ann. § 40-35-113(2), (11). The sentencing hearing transcript reveals that the trial court considered applying factor (11) but decided that the factor did not apply, stating, "Obviously, with this kind of record, the defendant should have known not to be around Ms. Cozart. That is beyond dispute."

Regarding factor (2), that the appellant acted under strong provocation, the trial court gave it little to no weight, stating, "Obviously, Mr. Calahan, you are wrong. You know the law is the law. You have had plenty of offenses with her and had to know that you could not be back around her." As we have repeatedly stated, the weighing of mitigating and enhancing factors is left to the trial court's sound discretion. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). Furthermore, the 2005 amendments to the 1989 Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Id. at 344. Therefore, the appellant is not entitled to relief on this issue.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.


_____
NORMA McGEE OGLE, JUDGE